791 F.2d 207
 253 U.S.App.D.C. 36
 ASSOCIATION OF MAXIMUM SERVICE TELECASTERS, et al., Petitioners,
v.
FEDERAL COMMUNICATIONS COMMISSION and the United States of
America, Respondents,
Consumer Electronics Group, Community Broadcasters
Association, Intervenors.
 No. 85-1258.
 United States Court of Appeals,
District of Columbia Circuit.
 Argued March 10, 1986.
Decided June 3, 1986.
As Amended June 3, 1986.
 
 Paul G. Gaston, with whom William H. Allen, Jonathan D. Blake, Henry L. Baumann, Julian L. Shepard and J. Laurent Scharff, Washington, D.C., were on brief for petitioners.
 Gregory M. Christopher, Counsel, F.C.C., with whom Jack D. Smith, Gen. Counsel and Daniel M. Armstrong, Associate Gen. Counsel, F.C.C., Washington, D.C., were on brief for respondents.
 James L. Casserly and Gary J. Shapiro, Washington, D.C., were on brief for intervenor, Consumer Electronics Group of Electronic Industries Ass'n.
 Peter Tannenwald, Washington, D.C., entered an appearance for intervenor, Community Broadcasters Ass'n.
 Before STARR and SILBERMAN, Circuit Judges, and WRIGHT, Senior Circuit Judge.
 OPINION PER CURIAM.
 
 PER CURIAM:
 
 1
 This case involves a challenge by petitioners and intervenors to the FCC's determination that a device Sanyo Manufacturing Corporation sought to market did not fall within the confines of the All-Channel Receiver Act of 1962, 47 U.S.C. Sec. 303(s) (1982), or the Commission's all-channel rules. The All-Channel Receiver Act (the Act) provides that the Commission "shall ... [h]ave authority to require that apparatus designed to receive television pictures broadcast simultaneously with sound be capable of adequately receiving all frequencies allocated by the Commission to television broadcasting." Id. Pursuant to this authority, the Commission promulgated regulations that closely track the language of the statute. 47 C.F.R. 15.4(g), 15.65(a) (1985). Sanyo represented to the Commission that its proposed device was substantially different from a traditional television broadcast receiver in that it lacked an antenna, was capable of receiving only two television channel frequencies (channels 3 and 4) and would be used with a cable television system or as a video display device for personal computers, video games and the like. In Sanyo's view, these differences warranted a waiver of the all-channel requirements.
 
 
 2
 The Commission dismissed Sanyo's waiver request on the ground that receivers like the Sanyo device--"a two channel receiver, marketed without an antenna and not intended to receive over-the-air broadcast signals"--were not subject to the Act or to the FCC's all-channel rules.[1] Two Commissioners dissented. On petitions for reconsideration, the majority of the Commission reiterated its earlier conclusion and rejected the contention that it had, in effect, amended its all-channel rules without following the requisite rule-making procedures. According to the Commission, adherence to such procedures was unnecessary because its holding was limited to Sanyo's particular device and because "waiver proceedings are more properly termed adjudicatory."[2]
 
 
 3
 With a petition for review then pending in this court, the Commission's counsel "explored the possibility of seeking a voluntary remand and vacating the case as moot" in light of information that Sanyo no longer intended to manufacture the device at issue. Brief for FCC at 5 n. 1. Subsequently, FCC counsel represented to the court as follows:
 
 
 4
 The Commission ... concluded ... that this is not an appropriate case for a suggestion of mootness. The Commission intended its decision in this case to have an applicability which transcended the particular Sanyo device that led to the decision.
 
 
 5
 Id.
 
 
 6
 At oral argument, the court questioned at length counsel for petitioners and the Commission as to whether the case had become moot in light of Sanyo's decision not to market the device. Both parties fervently maintained that the case was not moot. In post-argument submissions to the court, however, counsel for both sides indicated that, while the issue was not free from doubt, they believed upon reflection that the matter had become moot in light of Sanyo's action. At the same time, intervenor Consumer Electronics Group of the Electronic Industries Association filed a submission contesting this latter-day position and emphasizing that, in its view, the FCC intended to have its determination in this matter apply generally. Intervenor argued in particular that no future opportunity would exist to review the FCC's determination, inasmuch as the Commission had, as intervenor saw it, signaled its intention not to enforce the Act against devices functionally equivalent to that proposed by Sanyo.
 
 
 7
 In a second set of post-argument submissions, petitioners and the Commission reembraced their earlier position that the case was indeed live. The changed circumstance, as the parties see it, leading to this volte-face is the current manufacturing and marketing by an American firm of a security surveillance device that has the capability of receiving two television broadcast channels. Intervenor and the FCC inform us that a security device manufactured by Magnavox Corporation was approved by the FCC laboratory on the basis of the Commission's action in the present matter. To prove that even the most elementary facts seem difficult to establish in this case, petitioners represent that they "have been apprised of a 'Grant of Equipment Authorization' " by the Commission itself for a two-channel television receiver "manufactured by N.A.P. Consumer Electronics Corporation." Petitioners' Reply Statement at 1-2 (filed April 17, 1986).
 
 
 8
 After careful consideration, we conclude that our obligation under Article III of the Constitution to resolve only live cases and controversies requires us to remand the record to the Commission for clarification. To properly determine whether this case remains justiciable, we need to know whether the Commission indeed intended its decision to apply only to the Sanyo device or, contrariwise, to apply more broadly. Although the first FCC order (and FCC counsel's representation) suggests that a broader interpretation was intended, the FCC's own decision on reconsideration expressly limits its holding to "the statutory and regulatory status of Sanyo's product" and disavows any intention "to set forth enunciated standards for determining the legality of other, but not identical, products." Memorandum Opinion and Order, FCC 85-82 at 6 (released Feb. 26, 1985). Because the mootness vel non of this petition for review (as well as our resolution of the APA challenge) may depend upon the intended effect of the Commission's ruling, we cannot appropriately proceed without clarification.
 
 
 9
 In addition, the confused state of the record regarding the FCC's treatment of the security surveillance device also hampers our consideration of justiciability. For example, we do not know whether the FCC has issued final approval of that device; to what extent the Sanyo decision influenced that approval; or whether any such approval may be challenged before the FCC by petitioners and intervenors. Finally, we note that no explanation has been provided as to how marketing of the security device injures any of the complaining parties. Cf. Petitioners' Reply Statement at 3 (filed April 17, 1986) ("[T]he surveillance product authorized by the Commission is a far cry from the Sanyo receiver.").
 
 
 10
 In light of the confused state of both the record and the Commission's holding, we remand the record for an explanation of (1) what effect the FCC intended its Sanyo ruling to have, consistent with its obligations under the APA; (2) the nature and status of the security surveillance device proceeding; and (3) the relationship of the latter proceeding, if any, to the one at hand.
 
 
 11
 It is so ordered.
 
 
 
 [1]
 Memorandum Opinion and Order, FCC 84-26 at p 9 (released July 20, 1984). The Commission captioned its Opinion as follow: "Amendment of Part 15 of the Commission's Rules to provide for the operation of a limited reception TV receiver."
 
 
 [2]
 Memorandum Opinion and Order, FCC 85-82 at 6 (released Feb. 26, 1985). The Commission explained its caption of its original opinion, see supra note 1, as an "editorial error." Id